FRAZIER, J.
This cause was before this court at a previous term upon another question and is reported in 12 C. C., 66.
William M. Trainer, as administrator of the estate of Josiah Phillips, deceased, filed his petition in the court of common pleas, and among other things he averred that the death of Josiah Phillips was caused by the wrongful acts of the defendant, The Pennsylvania Company, and avers that a certain crossing of the defendant’s railway within the city of Steubenville, where it crosses Sixth avenue, was not provided with a watchman or gates, and sets out that it was a dangerous railway crossing by reason of the bluff and hill and the elevated tracks leading to the Riverside Furnace, etc., and it also sets out that the servants of the company failed to give warning of he approach of the train,and that they were running the train at an excessive rate of speed and in violation of an ordinance of the city of Steubenville.
To this petition the defendant answers admitting its corporate existence, the operation of the railroad as stated, and a collision with the decedent, Pillips, by reason of which his death was caused, and denies all the other allegations of the petition. And for a second defense says: “That the said Josiah Phillips came in collision with the train by reason of negligence on his part which directly contributed thereto.”
The plaintiff by reply denies the second defense.
A jury was empaneled, testimony introduced by.both parties, a’ verdict for plaintiff and motion for a new trial made and a bill of exceptions taken, setting out all the evidence, the rulings in the case and the charge of the court,
It is admitted by counsel for plaintiff in error in the presentation of the case that this is a' dangerous crossing, and, as I understand counsel, the sole objection urged is contributory negligence on the part of the deceased.
The evidence in thi3 case is, as is usual in cases of this character, conflictng.
The persons who has had the management of the train, and at -least one passenger who was on it at the time of tho collision were called as witnesses. Other witnesses were called, but probably the only others who were in a position to see and judge correctly of the acts and conduct of the trainmen were the young men Harry Mertz and William Henry.
They testified that they were passing along the railroad track, taking a walk upon the Christmas day this accident happened. They testify that they got off the track as the train approached them and that the whistle was sounded just as it passed them, and in fact one or both of them claim that it was in such near proximity that they were deafened thereby. They testify t.hat as soon as the train passed, they got upon the track and” at that point they could see the crossing, the train afterwards intervening between them and the crossing-. They testify at the time they-got upon the track, after the train passed them, they saw the horse’s fore feet upon the track. They did not see the engine strike the deceased, but they saw the fragments of the cart in the air — the train intervening at the instant between them and the deceased.
They testify, or one of them at least, that they were with the civil engineer, and that they saw the distance measured from the point where the deceased was struck to the point that the whistle *718 was sounded,and that it ia 810 feet. If it had been sounded at the 8 rods or minimum distance required by statute it would have been 1310 feet.
The city ordinance provides that trains shall not be propelled within the city limits at a greater speed than 10 mile an hour.
It is also in testimony that the cart would be 10J^ feet in length, and that, (as I understand it,) would be substantially the distance from the point where the horse’s forefeet would be on the track to where the deceased was sitting in the cart. Probably that is not quite accurate.
It is also in testimony by the engineer who made the measurements that it is 39 feet from the center of the track to the outer post of the trustle, or elevated track leading to the furnace, or as-some other witness testified, it was from 30 to 40 feet from the track to where the turn is made to go under the track or trustle. The engineer, Mr. Flannagan, testifies also that the opening for the roadway between those trusties is 18 feet. He also testifies that at the time he made the measurements he placed a man 12 feet west of the track — that being the direction in which the deceased was approaching — and they walked down the track to a point that the man would disappear from sight — that is, he was 12 feet from the railroad track — and the distance is 568 feet.
Rebecca Hibbetts and Bertha Stevenhart, two young girls, were near the crossing as deceased approached; and one of them, Miss Stevenhart, spoke to the deceased and said to him, in substance, “Mr. the train is coming.”
There is a controversy as to the point at which the deceased was at the time he was spoken to, and it is claimed that, both before the coroner and on a former trial of this case, Rebecca Hibbetts testified that she hallooed to him and that he was then turning to go in under the track. The testimony of both of the girls now is that it was Bertha Stevenhart, and not Rebecca Hitíbets, who hailed the deceased or spoke to him. They both testify that the Hibbetts girl started to run and left, and the Stevenhart girl stood there and saw the accident. They now both claim that when the deceased was spoken to by the Stevenhart girl that the horse’s feet were just going upon the track.
I say there is a controversy as to what the testimony was on former occasions but at the present trial they testify that they saw the approaching train; and they testify, both of the girls, and also George Preston who appears to have been near the place at the time, that they heard no whistle until the alarm was. sounded there, which was evidently intended for an alarm to deceased, or, as the Preston boy says, it was “toot, toot, toot” The Preston boy also testifies that at that time he was two telegraph poles away from where the accident happened; that he was passing up to the railroad, and that he saw the train coming. He would not admit that he heard it coming.
Harry Mertz and William Henry testify that the only persons present were the two girls and this boy. They did not know who he was.
Bu.t I apprehend there is no serious question in this case except as to the contributory negligence of the deceased — whether he could have known of the approach of the train-^or, in other words, whether he could have heard that whistle or seen the approaching train in time to have avoided the danger.
That question, as I understand it, is a mixed question of law *719 and fact, in a proper case to be submitted to a jury. The question has repeatedly been before the courts of this state in different forms.
Ip the case of the Cleveland, Columbus & Cincinnati Railway Company v. Crawford, 24 Ohio St., 631, it is stated: “In an action for damages for alleged negligence the question'of negligence on the part of the defendant or of contributory negligence on the part of the plaintiff, is a mixed question of law and fact, to be decided by the jury, under proper instructions from the court. But, if all the material facts touching the alleged negligence be undisputed, or be found by the jury, and admit of no rational inference but that of negligence, in such case the question of negligence becomes a matter of la® merely, and the court should so charge the jury. ”
It has, as I have said, been seated in different forms. It is stated in the case of Railway Company v. Murphy, Administrat- or, 50 Ohio St., 135, 137. “The evidence as to contributory negligence on the part of deceased made a case which, at least, was doubtful, and about which different minds might differ as to the proper inference to be drawn. Such a question cannot properly be determined by the court as matter of law, and should be submitted to the jury.”
And the last utterance of our supreme court in the case of Cincinnati Street Railway Company v. Snell, 54 Ohio St., 197. In the fourth proposition of tne syllabus it is said: “Where the evidence of the plaintiff shows actionable negligence on the part of the company, and the question'of contributory negligence of the plaintiff depends upon a variety of circumstances from which different minds may reasonably arrive at different conclusions as to whether there was contributory negligence or not, the question should be submitted to the jury under proper instructions; and it is error in such case for the court to direct a verdict for the defendant.”
In this case, without spending more time, we understand that the evidence is conflicting to say the least, and that it is not a case in which the court can say, as a matter of law, that the deceased was guilty of contributory negligence.
It is, as I have said, admitted that this is a dangerous crossing; it is admitted that it is within the city of Steubenville, and that the train was running at a greater rate of speed than was provided by the ordinance is not controvered; and whilst it was said in this case correctly, and the court so charged, that of itself does not warrant a recovery, yet, we understand that it is a matter that is competent to be give in evidence.
In Meek v. The Pennsylvania Company, 38 Ohio St., 632, and this case has been affirmed substantially in 45 Ohio St., Judge Johnson,in the opinion says: “This ordinance was admissible as reflecting upon the question of the care exercised by the deceased in view of the fact that the defendant was guilty of an act forbidden by an ordinance, which he had no reason to anticipate. Again, proof that defendant was violating this ordinance, was in its nature evidence tending to show defendant’s liability, where the injury resulted from not observing it. The statute gives a right of action where death is caused by wrongful act, neglect or default, in other words, for an injury negligently or intentionally c.aused. While the violation of a law or ordinance is not, per se, conclusive proof of negligence that will render the company *720 liable, yet it is competent to be considered with' all the other evidence in the case. The ordinance was enacted for the purpose of rendering the streets more safe and convenient for the public. It is a police regulation defining what is a legitimate use of the streets by the railroad company. It was a command, to those operating trains within the city limits which it was their duty to obey, and a disobedience, either wilfully or negligently, resulting in injury is some evidence to be considered in determining the defendant’s liability.” Cited and approved in Davis v. Guarnieri, 45 Ohio St., 470.
And that, is all that was charged in this case.
And again in Railway Company v. Herrick, 49 Ohio St., 52, Bradbury, Judge, says: “The only remaining question relates to the admissibility of the village of Norwalk prescribing the maximum rate of speed at which trains may be run through the village. The Railway Company was not charged with running its train at this time at a greater rate of speed than the ordinance permitted; no issue of the kind was made up; there was not a word in any of the pleadings to indicate, even that the vilage of Norwalk had ever adopted an ordinance on this subject. In what manner, therefore, the ordinance could enlighten the jury respecting the issues on trial before them is not shown by an examiation of the pleadings alone. Surely the plaintiff in error ould not justify dashing its train,regardess of consequences, if it did so, into the crowd of people crossing its tracu because its rate of speed at the time was within thelimits prescribed by ordinance.”
In that case the ordinance was offered by the Railway Company in order to show that they were not exceeding the rate of speed at which they were allowed by ordinance to run its trains at the place of the accident. Speaking for myself, I will say that this question of an ordinance to regulate the speed of trains is requently misused; that is, it is attempted to be applied to a use which is not legitimate; and this brings me to the exception to the refusal of the court to charge the 9f.h proposition or request of the defendant, which is as follows: “It is in proof that Phillips was not a resident of the city of Steubenville. It cannot be presumed by you, in the absence of testimony, that he had knowledge of the ordinances of the city of Steubenville relating to speed, and the plaintiff in this action cannot take advantage of he violation of such ordinance.” I apprehend upon the question of contributory negligence where the person injured sees or knows of an approaching train and attempts to cross and is thereby injured, if he knows of the existence of the ordinance and has reason to believe it yvill be observed by the persons' in the management of the train, and the injury would not have occurred but or its violation, or, when the ordinance has induced him to do something or omit the doing of something which, without that knowledge, he would either have done or not have omitted to do, that his act will not constitute such contributory negligence as will prevent a recovery.
How can it be any excuse to a man upon the question of contributory negligence, to say, I did not know that the train was coming; it gave me no warning, and I did not see it, and claim that the action is controlled by the ordinance?
For myself, I am not prepared to say that because a person resides without tne limits of the c.ity, that of itself is conclusive *721 evidence he does not know of the'ordinance,- and so far asT it being a matter to explain his apparent negligence, he cannot' claim anything from it — that is, that they are running faster than the ordinance provides, when he doesn’t know of such ordinance.
J. R. Cary, J. Dunbar, and W. C. Boyle, for Plaintiff in Error.
Trainer & Son, for Defendant in Error.
This court substantially held that in a case where the party himself was before the court as a witness and made no claim 'to knowledge of an ordinance of that character, it is no excuse to him.
But, if the first part of this request is true — if from the fact of his being a non-resident of the city of Steubenville,residing without its limits,his ignorance of the ordinance is to be presumed and the jury so told, it goes too far. The request is: “and the plaintiff in this action cannot take advantage of the violation of such or • dinance.”
He may introduce thq ordinance; he may piove it, as bearing upon the question of negligence upon the part of the defendant company, and thus far, at last, he may take advantage of it.
In short, the majority of the court are of opinion that within the well recognized rule, that where different minds may come to different conclusions upon a state of facts, the question of contributory negligence should, in the first instance at least, be submitted to the jury; and that where the facts are such as to make .the conclusion reasonable, that the jury had a right to infer from these facts that the party was not guilty of contributory negligence, the court should not interfere to disturb the verdict.
Or, in other words, the evidence in this case is such that, in the opinion of the majority of the court, they are not authorized to say that the jury erred in its finding.
The judgment of the court of common pleas will be affirmed with costs, no penalty.
Laurie. J., dissents.